*The Probate of a paper propounded as the Will of* SARAH MAURAN PAULDING.

THE domicil of a wife is determined by that of her husband. A wife living apart from her husband cannot have a separate domicil for testamentary purposes.

NOYES, TRACY *and* WHITEHEAD *for the Proponent.*
MILLS & COCHRAN *for Contestants.*

THE SURROGATE. The only question presented here is whether the decedent was in contemplation of law domiciled in the city and county of New York, or in the county of Westchester.

She was born and, prior to her marriage, resided in New York, and her family there resided. In 1851, she married Philip R. Paulding, who, at that time, resided and has ever since resided at Tarrytown, Westchester county. She went there and lived with him there till May, 1856, and had by her husband two children. In May, 1856, she voluntarily withdrew from her husband, and continued to live separate from him till her death, making her stay at the house of her sister, Mrs. Gibbs, in New York, and at Cambridge, Massachusetts, during the winters, and at various watering places during the summers. No divorce, absolute or limited, was ever applied for by either party, nor was any agreement for separation made between them; nor did the husband ever consent to the separation.

The Common Law rule is that the domicil of the wife follows and is determined by that of the husband. Her right to select and to obtain another legal domicil is, however, held to be restored to her by a dissolution of the marriage contract, or by a separation, *a mensa et thoro,* by the decrees of competent Courts. (*Williams* v. *Dermer,* 9 *Eng. L. & E.,* 578; *Barber* v. *Barber,* 21 *How. U. S.,* 593; *Vischer* v. *Vischer,* 12 *Barb.,* 640.) There

is also a possibility that the wife might acquire an independent domicil for some purposes, while living separate from her husband in pursuance of articles of separation agreed upon between them; and it has been held that, for the purpose of proceedings to obtain a divorce, a wife may, after removing from her husband's house, by reason of a sufficient fault in him, obtain a new domicil by election elsewhere. (*Harding* v. *Alden*, 9 *Greenleaf*, 140; *Ditson* v. *Ditson*, 4 *R. I.*, 87; *Schonwald* v. *Schonwald*,, 2 *Jones Eq.* 367.) This rule was adopted for the necessary convenience of suitors. The rule, however, cannot be extended by any fair interpretation so far as to maintain that a mere voluntary withdrawal of the wife from the husband's roof will entitle her, of her own will, to select and obtain a legal domicil, for all purposes, elsewhere. While she remains subject to the condition and the disabilities of the wife, and takes no steps to relieve herself therefrom, she cannot choose that her domicil, in legal contemplation, shall be one which is not his.

Nor have the reasons by which Mrs. Paulding may have been influenced in this withdrawal from her husband, any bearing on the legal question.

The law specifies the reasons and the manner by which the obligations of the marriage contract may be nullified. If she had, as alleged by the proponents, legal ground for a separation from bed and board, she was in no wise precluded from obtaining it by the adjudication of the Courts. I must decline to consider that point in deciding this case.

It is my judgment that Mrs. Paulding's legal domicil must be held to have been that of her husband, in Westchester county; and as the statute gives no jurisdiction to me to take proof of the will of a deceased inhabitant of this State, not being an inhabitant of this county, and as the term "inhabitant" is to be construed, where used in the statute, as having reference to the domicil of the decedent (*Isham* v. *Gibbons*, 1 *Brad. R.*, 70), the peti-

tion for probate must be, on that ground, denied, and the proceedings adjudged to belong to the jurisdiction of the Surrogate of Westchester county.